IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY JOE BISHOP, | § | |
| | § | #72 |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-91-0038 |
| | § | |
| JOE CORLEY, SHERIFF OF | § | UNITED STATES DISTRICT COURT |
| MONTGOMERY COUNTY, TEXAS; | § | SOUTHERN DISTRICT OF TEXAS |
| JOHN SCHEER, MEDIC, | § | |
| MONTGOMERY COUNTY JAIL, | § | JAN 20 1995 |
| | § | |
| Defendants. | § | Michael N. Milby, Clerk |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was tried to the court on December 19, 1994, and January 4, 1995. The court has considered the testimony of the witnesses, the exhibits, the arguments of the parties, and the applicable law. The court has also reviewed medical records relating to Bishop that were in the custody of the Texas Department of Criminal Justice. These documents will be admitted into evidence and made part of the record in this case as Trial Exhibit 8.

The court enters the following Findings of Fact and Conclusions of Law.

1. Plaintiff Terry Joe Bishop ("Bishop") was incarcerated in the Montgomery County Jail from September 9, 1990 through April 19, 1991 and from April 29, 1991 through May 17, 1991.

2. John Scheer ("Scheer") was employed as a medic in the Montgomery County Jail Infirmary during the relevant time periods.

3. During the relevant time period, when an inmate entered the Montgomery County jail, the jail staff established that any prescription medication that the inmate stated he required was prescribed for that inmate by a licensed physician, and that the prescription was up to date. The physician retained by the jail evaluated the inmate's condition from the medic's exam or the physician's own exam. The physician then prescribed the medications to be dispensed to the inmate. This practice was designed to safeguard against inmates receiving drugs that had not been properly prescribed.

4. Bishop was admitted to the Montgomery County Jail as a pretrial detainee on September 9, 1990. On September 10, 1990, within less than one day of Bishop's booking, Rick Curtis, an Emergency Medical Technician at the jail, held a medical interview with Bishop. In this interview, Bishop reported an operation on his lumbar spine four months earlier. Bishop explained that he was taking Vicoden and Voltaren for his back pain. In the interview notes, the technician wrote that Bishop "will restart meds pending MD approval." (Exhibit 2).

5. Dr. Pontani, the physician retained by Montgomery County, approved Bishop's medications. On September 15, 1990, Bishop was prescribed Voltaren, 75 milligrams, a non-steroidal anti-inflammatory drug, twice daily. Bishop was

also prescribed Vicoden, a schedule III addictive narcotic, to treat pain on an as-needed basis. Medications which are taken on an as-needed basis, such as Vicoden, are dispensed only if an effective prescription is on file and the inmate requests the medication. The dispensation of such drugs may be delayed if the medics are responding to an emergency or to other, more pressing, demands from other inmates needing medical attention.

6. The records reflect that Bishop was dispensed Vicoden on 9-16-90 at 0600 and 1800 hours; 9-17-90 at 0600 hours; 9-19-90 at 0600 hours; 9-23-90 at 0356 hours; 9-25-90 at 1000 hours; 9-26-90 at 1000 hours; 9-28-90 at 0600 hours; 9-29-90 at 1800 hours; 10-02-90 at 1800 hours; and 10-07-90 at 1200 hours.

7. In his lawsuit, Bishop admits that he was given the Voltaren, a non-narcotic prescription medication, as prescribed. His complaint is that he did not receive the Vicoden, a narcotic pain reliever, every time that he asked for it. Bishop alleges that it was withheld by Scheer without any medical basis.

8. Bishop's prescription for Vicoden expired on October 7, 1990. On December 2, 1990, Scheer refused Bishop's request for pain medication because the prescription for Vicoden had expired, and Bishop was not in an emergency or life threatening condition.

9. On December 3, 1990, Dr. Pontani renewed Bishop's Vicoden prescription. Bishop was given Vicoden on December 3, 1990, at 1800 hours. Bishop was also given Vicoden on the following dates and times: 12-05-90 at

0600 and 1800 hours; 12-06-90 at 0600 and 1800 hours; 12-07-90 at 0600 and 1800 hours; 12-08-90 at 0600 and 1800 hours; and 12-09-90 at 0600 and 1800 hours. On December 9, 1990, Bishop's prescription for Vicoden again expired.

10.  Bishop slipped and fell in the jail shower on February 6, 1991. Scheer treated Bishop at the jail. EMS transported Bishop to the Medical Center Hospital, Conroe, Texas. At the hospital, the emergency room physician examined Bishop, diagnosed a low back strain, and instructed Bishop to continue taking Voltaren, to apply heat to his low back as needed, to return to Medical Center Hospital if needed, and to follow up with Dr. Pontani. The instructions did not include any pain medication.

11.  The jail infirmary followed the hospital doctor's orders and continued treating Bishop with Voltaren. Bishop was also separated from other inmates for rest, recovery, security, and medical observation.

12.  Bishop's medical chart reveals other occasions on which he requested medical treatment and was treated by jail infirmary medics. On March 23, 1991, Bishop complained of a sore throat, cough, and sinus drainage. A medic gave Bishop 50 milligrams of Benadryl immediately and 25 milligrams of Benadryl to be given three times a day, and throat lozenges. On March 28, 1991, Bishop still complained of a sore throat, sore chest, and cough. Another medic examined Bishop, dispensed Robitussin cough syrup, and advised Bishop to take Tylenol for fever.

13. Bishop was transferred from Montgomery County jail to TDCJ on April 19, 1991. He returned to the Montgomery County jail on April 29, 1991.

14. During the relevant time periods, the jail infirmary treated Bishop on at least ten occasions and dispensed medications on numerous occasions.

15. Bishop received prompt medical screening. His anti-inflammatory medication was provided as prescribed. On those occasions on which Bishop requested pain medication for his back and his request was refused, the refusal was reasonably related to the reasonable governmental objectives of requiring that an effective prescription be in place, giving the highest priority to medications for life threatening or emergency situations, and safeguarding against the improper use of narcotic drugs in the jail.

16. Bishop received reasonable medical care.

## CONCLUSIONS OF LAW

1. A pretrial detainee is entitled to medical care measured under the following standard:

> Pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective. Furthermore, pretrial detainees are entitled to protection from adverse conditions of confinement created by prison officials for a punitive purpose or with punitive intent.

*Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987) (applying standard from *Bell v. Wolfish*, 441 U.S. 520 (1979)); *see also Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992).

2. Bishop received reasonable medical care. On those occasions on which Bishop requested pain medication for his back and his request was refused, the refusal was reasonably related to the reasonable governmental objectives of requiring effective prescriptions, giving the highest priority to medications for life threatening or emergency situations, and safeguarding against the improper use of narcotic drugs in the jail.

This court finds that judgment should be entered for defendants. Plaintiff's case is dismissed, with prejudice.

SIGNED on January 19, 1995, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge